KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
ALLYSON R. BENNETT (State Bar No. 302090)
allyson.bennett@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:   (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT INC., <br><br> Plaintiff, <br><br> vs. <br><br> INNOVATIVE ARTISTS TALENT AND LITERARY AGENCY, INC.; INNOVATIVE ARTISTS; INNOVATIVE ARTISTS, LLC; and INNOVATIVE ARTISTS TALENT AND LITERARY AGENCY N.Y., INC., <br><br> Defendants. | Case No. 2:16-cv-7902 <br><br> **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND VIOLATION OF DIGITAL MILLENNIUM COPYRIGHT ACT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Warner Bros. Entertainment Inc. ("Warner Bros." or "Plaintiff"), through its undersigned counsel, bring this Complaint against Defendants Innovative Artists Talent and Literary Agency, Inc.; Innovative Artists; Innovative Artists, LLC; and Innovative Artists Talent and Literary Agency N.Y., Inc. (collectively, "Innovative Artists") for infringing Plaintiff's exclusive rights under the Copyright Act (17 U.S.C. § 101 *et seq.*) and for violating the Digital Millennium Copyright Act (§ 1201 *et seq.*) ("DMCA").  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. §§ 501(b), 1203(a).  Plaintiff alleges, on personal knowledge as to itself and information and belief as to others, as follows:

## INTRODUCTION

1.      Beginning in late 2015, Innovative Artists set up and operated an illegal digital distribution platform that copied movies and then distributed copies and streamed public performances of those movies to numerous people inside and outside of the agency.  Innovative Artists stocked its platform with copies of Plaintiff's works, including copies that Innovative Artists made by ripping awards consideration "screener" DVDs that Plaintiff sent to the agency to deliver to one of its clients.  In some cases, Innovative Artists' infringing copies of Plaintiff's works quickly made their way from Innovative Artists' platform to online piracy sites while those movies were still being made available to the general public exclusively in theaters.  The actions Plaintiff complains of are blatantly illegal.  That illegality would be obvious to anyone, but especially to Innovative Artists, a talent agency that claims to promote the interests of actors, writers, directors and others whose livelihoods depend critically on respect for copyright.

2.      Plaintiff discovered Innovative Artists' unlawful conduct after unauthorized copies of two of its movies, *Creed* and *In the Heart of the Sea*, appeared online in December 2015, shortly after Plaintiff distributed screeners of those movies to members of the Academy of Motion Picture Arts & Sciences.

COMPLAINT

Because the screeners were "watermarked"—embedded with markers that identified their intended recipients—Plaintiff traced the copies to screeners that Plaintiff had sent to an Innovative Artists client, in care of the agency.  Instead of forwarding the screeners directly to its client, Innovative Artists used illegal ripping software to bypass the technical measures that prevent access to and copying of the content on DVDs.  Innovative Artists then copied the movies to its digital distribution platform, where those copies became available for immediate downloading and streaming along with infringing copies of many other copyrighted movies.

3.      Plaintiff brings this action to remedy Innovative Artists' violation of its rights and for an injunction barring Innovative Artists from violating those rights in the future.

## THE PARTIES

4.      Plaintiff Warner Bros. Entertainment Inc. is a corporation duly incorporated under the laws of the State of Delaware with its principal place of business in Burbank, California.  Warner Bros. and its affiliates produce, distribute and license popular motion picture and television content.  Warner Bros. owns or controls the copyrights and exclusive rights in the content that it or its affiliates produce or distribute (the "Copyrighted Works").

5.      Warner Bros. has obtained Certificates of Copyright Registration for the Copyrighted Works.  Exhibit A includes several of the Copyrighted Works, along with their registration numbers, that are at issue here.

6.      Defendant Innovative Artists Talent And Literary Agency, Inc. is a corporation duly incorporated under the laws of the State of California with its principal place of business in Santa Monica, California.

7.      Defendant Innovative Artists is a corporation duly incorporated under the laws of the State of California with its principal place of business in Santa Monica, California.

COMPLAINT

8. Defendant Innovative Artists, LLC is a corporation duly incorporated under the laws of the State of California with its principal place of business in Santa Monica, California.

9. Defendant Innovative Artists Talent and Literary Agency N.Y., Inc. is a corporation duly incorporated under the laws of the State of  Delaware with its principal place of business in New York.  It also has offices in California.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. §§ 501(b), 1203(a).

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) 1400(a).

## BACKGROUND FACTS

**Plaintiff and Its Copyrighted Works**

12. Plaintiff or its affiliates produce and distribute some of the most popular and critically acclaimed motion pictures and television shows in the world.

13. Plaintiff has invested (and continues to invest) substantial resources and effort each year to develop, produce and exploit its Copyrighted Works.

14. Plaintiff owns or co-owns and has the exclusive U.S. rights (among others) to reproduce, distribute and publicly perform each of its Copyrighted Works.

**Plaintiff's Screeners and Measures to Protect Content on DVDs**

15. Plaintiff and many other copyright owners in the entertainment industry send screeners of their copyrighted works to voting members of the academies that annually bestow awards for outstanding achievement in the creation of motion pictures.  A screener copy of a movie typically is fixed on a DVD.  Plaintiff sends screeners so that voting members of an academy (e.g., the Academy of Motion Picture Arts and Sciences) can watch Plaintiff's works in evaluating whether to vote for those works for an award (e.g., an Academy Award).

16.     Plaintiff provides screeners on the understanding and agreement of the recipient that the underlying content is owned by Plaintiff; that Plaintiff is providing the screener to the recipient solely for their personal viewing in connection with awards consideration; and that the recipient may not copy, sell or otherwise disseminate the screener's contents.

17.     Screeners present significant content security risks for Plaintiff.  The underlying copyrighted content on the DVDs is in digital format; if unprotected, that content can be copied repeatedly without any degradation in quality.  Once a version of Plaintiff's content is available "in the clear"—i.e., without any technological protection—the content can be copied, distributed and streamed without numerical or geographic limitation.  In addition, screener DVDs often contain very popular and critically acclaimed content, including in some cases movies that have yet to be theatrically released.  Plaintiff therefore generally takes additional steps to protect its content when it sends out certain screener DVDs.

18.     First, as with content it commercially distributes on DVDs and Blu-ray discs, Plaintiff sends screeners on DVDs that utilize technological protection measures (or "TPMs").  In the case of screener DVDs, Plaintiff utilizes Discs protected with CSS or Patronus.  In the ordinary course of their operation, the TPMs that Plaintiff uses protect against unauthorized access to and copying of the copyrighted content on the DVDs.

19.     CSS protects the audiovisual content on Plaintiff's DVDs through the use of encryption and keys embedded in the content recorded on the physical discs.

20.     Patronus provides additional protection for DVD content by encapsulating the underlying files and further preventing access to the embedded content.

21.     In the ordinary course of their operation, CSS, Patronus and other TPMs ensure that the content embedded on the DVD will be accessible only for contemporaneous playback through an authorized device.  These licensing and

technology systems allow copyright owners to distribute their content on DVDs while limiting unauthorized copying or redistribution of that content.

22.     Second, Plaintiff marks screeners with individual digital watermarks, traceable to the recipient.  Invisible to the viewer, the watermark allows Plaintiff to determine the origin of illegal copies that have been uploaded to the internet.

**Innovative Artists' Unlawful Digital Distribution Platform and Infringement of Plaintiff's Copyrights**

23.     Innovative Artists is a talent and literary agency.

24.     In early 2015, Innovative Artists began using a Google cloud-based platform ("Google Drive") for email and file services.

25.     In or around November 2015, Innovative Artists decided that it would distribute movies using its Google Drive account.  Innovative Artists' technology department set up the digital distribution platform as a file-sharing folder on the agency's Google Drive account.  Innovative Artists then used the platform to upload and distribute digital copies of films.

26.     Innovative Artists' digital distribution platform included copies of the Copyrighted Works.

27.     Innovative Artists did not have Plaintiff's authorization, permission or consent to upload copies of the Copyrighted Works to the digital distribution platform.

28.     Innovative Artists did not have Plaintiff's authorization, permission or consent to exercise any of Plaintiff's other exclusive rights under copyright with respect to the Copyrighted Works.

29.     Those without an Innovative Artists email address could not automatically access the digital distribution platform.  However, Innovative Artists executives directed staff to provide access credentials to numerous managers, family members, friends and others outside of the agency.

30.     People inside and outside the agency with access to the digital distribution platform could and did download copies of the Copyrighted Works to other computer media.  Those with access could choose instead to request that Innovative Artists' digital distribution platform stream performances of the content to them.

31.     Innovative Artists knew copies obtained from its digital distribution platform would be further disseminated.  For example, in one case, Innovative Artists granted access to all files within the platform to an individual at another company, knowing that the other individual intended to distribute copies of the movies in the file to others.

32.     Innovative Artists traded access to some of its unauthorized digital copies of movies in exchange for unauthorized copies of content possessed by third parties.  For example, in one case, Innovative Artists granted an assistant at another company access to the digital distribution platform because the assistant had provided a screener to Innovative Artists for a title that was not already on the platform.

33.     No person who downloaded or requested a stream of the Copyrighted Works from Innovative Artists' digital distribution platform had Plaintiff's authorization, permission or consent to do so.

**Innovative Artists' Illegal Circumvention of the TPMs on Plaintiff's Screener DVDs**

34.     In its capacity as a talent agency, Innovative Artists receives screeners from Plaintiff on behalf of clients who are members of one or more awards groups. As with other similar materials Innovative Artists receives on behalf of its principals, the senders and recipients understand that Innovative Artists will forward the materials to those principals.

35.     In some cases, however, Innovative Artists did not simply give the DVDs to the intended recipient.  Innovative Artists instead would "rip" the DVDs—

-6-

i.e., it would use illegal circumvention software to bypass or remove the TPMs on the DVDs—and then make digital copies of the embedded content to a "folder" on a third-party server.

36.     Innovative Artists obtained digital copies of *Creed* and *In the Heart of the Sea* by circumventing the TPMs on the DVDs that Plaintiff sent to Innovative Artists' client.

**Plaintiff Discovers Innovative Artists' Unlawful Conduct**

37.     On December 20, 2015, Plaintiff received two alerts from Deluxe Entertainment Services Group ("Deluxe"), a company with which Plaintiff contracts to provide content security for its screeners.  Deluxe informed Plaintiff that *Creed* and *In the Heart of the Sea* had been pirated and were available online via an illegal peer-to-peer ("P2P") site.  Deluxe informed Plaintiff that, based on its watermark analysis, the copies of *Creed* and *In the Heart of the Sea* were ripped from screeners sent to an individual who Plaintiff later determined was an Innovative Artists' client. That client had designated Innovative Artists as the party to receive the screeners on the client's behalf.

38.     Plaintiff contacted Innovative Artists, which thereafter terminated the digital distribution platform.  Innovative Artists sent Plaintiff logs identifying the names or user names of persons who had downloaded movies from the distribution platform.  A log titled "All m4v downloaded files from dec 11 thru dec 22-AuditReport-20151223-1656" (but which appears to contain downloads only from December 18, 2015 through December 22, 2015) showed that the Copyrighted Works had been downloaded from Innovative Artists' distribution platform by more than twenty users just during the short period covered by the log.  The log did not provide data for the number or identification of individuals who had streamed the Copyrighted Works or who had further distributed downloaded copies.

**Innovative Artists' Digital Distribution Platform Causes Plaintiff Irreparable Harm**

39.     Plaintiff will continue sending screeners to awards group members.  In addition, Plaintiff continues to release Copyrighted Works on DVDs.

40.     In connection with Plaintiff's investigation, Innovative Artists represented that the agency terminated the digital distribution platform.  Innovative Artists has not, however, entered into a formal agreement, enforceable by injunctive relief, preventing it from using Plaintiff's works to populate a similar digital distribution platform now or in the future.

41.     Circumvention and infringement such as committed by Innovative Artists causes immediate and irreparable harm to Plaintiff.  The digital distribution platform included some of Plaintiff's most valuable and critically acclaimed Copyrighted Works.  Because Innovative Artists stored digital copies of the Copyrighted Works in the clear—i.e., without TPMs limiting access or copying—the Copyrighted Works were, and if reposted will be, at risk of limitless copying and distribution.  As noted, at least two of the Copyrighted Works were made available via a P2P BitTorrent site from copies obtained through Innovative Artists' distribution platform.

### FIRST CAUSE OF ACTION

### (Copyright Infringement, 17 U.S.C. § 106)

42.     Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 41 inclusive.

43.     Plaintiff is the owner of exclusive rights of copyright, as set forth in § 106 of the Copyright Act, in each of its Copyrighted Works.

44.     Innovative Artists has infringed Plaintiff's exclusive rights, including the rights to reproduce, distribute, or publicly perform the Copyrighted Works, in violation of 17 U.S.C. § 106(1), (3), (4).

45.   Innovative Artists has never had Plaintiff's authorization to exercise any of the rights of copyright with respect to any Copyrighted Work.

46.   Innovative Artists' acts of infringement are willful, in disregard of and with indifference to Plaintiff's rights.

47.   As a direct and proximate result of the infringements by Innovative Artists, Plaintiff is entitled to actual damages and Innovative Artists' profits from its infringing activity with respect to each Copyrighted Work, under 17 U.S.C. § 504, in amounts to be proven at trial.

48.   Alternatively, at its election, Plaintiff is entitled to statutory damages, up to the maximum amount of $150,000 per statutory award by virtue of Innovative Artists' willful infringement, or for such other amounts as may be proper under 17 U.S.C. § 504(c).

49.   Plaintiff further is entitled to recover its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

50.   As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and irreparable injury, for which there is no adequate remedy at law.  Unless enjoined and restrained by this Court, Innovative Artists will continue to infringe Plaintiff's rights in its Copyrighted Works.  Plaintiff is entitled to injunctive relief under 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION

**(Violation of the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201, *et seq.*)**

51.   Plaintiff incorporates herein by reference each and every averment contained in paragraphs 1 through 50 inclusive.

52.   Section 1201(a)(1)(A) of the DMCA provides in pertinent part that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under [the Copyright Act]."  17 U.S.C. § 1201(a)(1)(A).

53.    Plaintiff uses TPMs to effectively control access to, and to protect the exclusive rights of copyright in, motion pictures, television shows and other works protected by the Copyright Act.

54.    Innovative Artists circumvented the TPMs on DVDs containing Copyrighted Works, and thereby violated 17 U.S.C. § 1201(a)(1)(A).

55.    Plaintiff has sustained and will sustain actual damage as the result of Innovative Artists' DMCA violations, including, among other things, damages to the value of the Copyrighted Works and the reduction in Plaintiff's goodwill in the Copyrighted Works.  17 U.S.C. § 1203(c)(2).

56.    Alternatively, and at its election, Plaintiff is entitled to an award of the maximum statutory damages as permitted by the DMCA.  17 U.S.C. § 1203(c)(3).

57.    Innovative Artists' conduct, unless enjoined and restrained by this Court, will cause immediate and irreparable injury to Plaintiff, who has no adequate remedy at law.  Pursuant to 17 U.S.C. § 1203(b)(2), Plaintiff is entitled to preliminary and permanent injunctions prohibiting Innovative Artists' further violations of § 1201.

58.    Plaintiff is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Innovative Artists and its affiliates, agents, servants, employees, partners and all persons in active concert or participation with it, for the following relief:

1.    For Plaintiff's damages and Innovative Artists' profits from its infringing activity, in such amount as may be found; alternatively, at Plaintiff's election, for maximum statutory damages.

2.    For permanent injunctions enjoining Innovative Artists, and all persons acting in concert or participation with it, from reproducing, distributing, publicly performing, or otherwise infringing in any manner any copyrighted work owned or

controlled by Plaintiff (including without limitation any Copyrighted Work) and from circumventing TPMs safeguarding access to any copyrighted work owned or controlled by Plaintiff (including without limitation any Copyrighted Work).

3.      For prejudgment interest according to law.

4.      For Plaintiff's attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. §§ 505 and 1203.

5.      For all such further and additional relief, in law or in equity, to which Plaintiff may be entitled or which the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable by jury.

DATED:  October 24, 2016            MUNGER, TOLLES & OLSON LLP

By:   _/s/ Kelly M. Klaus_____
       KELLY M. KLAUS
       Attorneys for Plaintiff

COMPLAINT